IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| WILLIE JAMES CAFFEY, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 16-0391-N |
| | ) | |
| NANCY A. BERRYHILL[1], | ) | |
| Social Security Commissioner | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

In this action under 42 U.S.C. § 405(g) Plaintiff, Willie James Caffey, Jr., ("Caffey" or "Plaintiff") seeks judicial review of an adverse social security ruling denying disability insurance benefits. (Docs. 1, 16). With the consent of the parties, the Court has designated the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in this civil action, in accordance with 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and S.D. Ala. GenLR 73. (See Docs. 22, 23). The parties moved to waive oral argument and their request was granted. (See Docs. 21, 24). After considering the administrative record and the memoranda of the parties, it is **ORDERED** that the decision of the Commissioner be **AFFIRMED** and that this action be **DISMISSED**.

---

[1] Nancy A. Berryhill has replaced Carolyn Colvin and is now the acting Social Security Commissioner.

# PROCEDURAL BACKGROUND

Plaintiff protectively applied for disability insurance benefits on May 20, 2013. (Doc. 16 at 1; Tr. 1301-38). Plaintiff alleged a disability onset date of November 3, 2012. (Tr. at 18; 73). Plaintiff's application was initially denied on July 5, 2013, after which he requested a hearing. (Doc. 16 at 1; Tr. 82-86, 89-93). Plaintiff attended a video hearing before an Administrative Law Judge ("ALJ") on August 13, 2014, and the ALJ rendered an unfavorable decision on December 24, 2014. (Doc. 16 at 1; Tr. at 12-70).

At the time of his application, Plaintiff was forty years old, had completed the twelfth grade plus one year of trade school, and had previous work history as a shipping supervisor, shipping and receiving clerk, and warehouse worker. (Doc. 15; Tr. at 55). Plaintiff alleges he is disabled due to left clavicle fracture, left rotator cuff repair, essential hypertension, degenerative joint disease, tendinosis, chronic severe pain, depression, right arm and shoulder pain, numbness in hands, side effects of medications, neck pain, and back pain. (Doc. 15). On December 24, 2014, an ALJ denied benefits after determining that Plaintiff was capable of performing a limited range of light work. (Tr. at 19-27). Plaintiff requested review of the hearing decision, but the Appeals Council denied the request on May 24, 2016. (*Id*. at 1-9). On July 22, 2016, Plaintiff filed the instant action asserting three grounds for error. (Doc. 1; Doc. 16). The issues have been briefed and are ripe for review. (Docs. 16, 19).

## STANDARD OF REVIEW

"In Social Security appeals, [the Court] must determine whether the Commissioner's decision is ' "supported by substantial evidence and based on proper legal standards. Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." ' " *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (per curiam) (internal citation omitted) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997))). However, the Court " 'may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].' " *Winschel*, 631 F.3d at 1178 (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (alteration in original) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983))). " 'Even if the evidence preponderates against the [Commissioner]'s factual findings, we must affirm if the decision reached is supported by substantial evidence.' " *Ingram*, 496 F.3d at 1260 (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

"Yet, within this narrowly circumscribed role, [courts] do not act as automatons. [The court] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence[.]" *Bloodsworth*, 703 F.2d at 1239 (citations and quotation omitted). *See also Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam)

("We are neither to conduct a de novo proceeding, nor to rubber stamp the administrative decisions that come before us. Rather, our function is to ensure that the decision was based on a reasonable and consistently applied standard, and was carefully considered in light of all the relevant facts."). "In determining whether substantial evidence exists, [a court] must…tak[e] into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

Although the "claimant bears the burden of demonstrating the inability to return to [his or] her past relevant work, the Commissioner of Social Security has an obligation to develop a full and fair record." *Shnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987). *See also Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam) ("It is well-established that the ALJ has a basic duty to develop a full and fair record. Nevertheless, the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." (citations omitted)). "This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts. In determining whether a claimant is disabled, the ALJ must consider the evidence as a whole." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (per curiam) (citation and quotation omitted).

Where, as here, the ALJ denied benefits and the Appeals Council denied review of that decision, the Court "review[s] the ALJ's decision as the

4

Commissioner's final decision." *Doughty*, 245 F.3d at 1278. "[W]hen the [Appeals Council] has denied review, [the Court] will look only to the evidence actually presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence." *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998).

## DISCUSSION

At step two of the sequential process, the ALJ found that Plaintiff had the following severe impairments: "status post osteotomy of left clavicular malunion; open reduction and internal fixation of left clavicle with bone grafting (1/25/13) with revision of open reduction and internal fixation of clavicle nonunion with additional bone grafting (4/18/14), and osteoarthritis (20 CFR 404.1520(c))." (Tr. at 17). At step three, the ALJ found that "[t]he claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1(20 CFR, 4104.1520(c), 404.1525 and 404.1526)." (*Id*. at 18). The ALJ then determined Plaintiff's Residual Functional Capacity ("RFC") as follows:

> After careful consideration of the entire record, the undersigned administrative law judge finds that the Claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except Claimant can stand and/or walk at least six hours over the course of an eight-hour workday. Claimant cannot climb ladders, ropes, poles, or scaffolds. Claimant can frequently climb ramps and stairs. Claimant is not limited in the use of his lower extremities. Claimant can occasionally use his left upper extremity for reaching overhead, pushing, and pulling. Claimant is not otherwise limited in the use of his extremities. Claimant can occasionally work

5

in extreme cold. Claimant can frequently work in humidity, wetness, and extreme heat. Claimant cannot work at unprotected heights. Claimant cannot work with operating hazardous machinery. Claimant can occasionally operate motorized vehicles. Claimant can occasionally work while exposed to vibration affecting his upper extremities.

(Tr. at 19). With the help of a vocational expert, the ALJ then determined, at step five, that Plaintiff was capable of performing his past relevant work as a shipping supervisor as generally performed, but not as actually performed. (Tr. at 26). The ALJ additionally determined that Plaintiff was capable of performing other jobs which existed in the national economy and that Plaintiff was not disabled. (*Id.* at 26-27).

Plaintiff asserts the following grounds for error: (1) the ALJ's determination that Plaintiff can return to his past relevant work is not supported by substantial evidence, (2) the ALJ erred in not including a statement of Plaintiff's pain and its functional effects and erred in assessing Plaintiff's credibility; and (3) the ALJ was biased, incapable of conducting a non-adversarial hearing, and should have recused himself. (Doc. 16 at 1-2). Defendant contends the ALJ's decision was based on substantial evidence, that the ALJ properly assessed Plaintiff's pain, and that recusal was unwarranted. (Doc. 19, generally). The undersigned will address each contention of error in turn.

A. **Substantial Evidence**

Plaintiff asserts that the ALJ erred in determining that Plaintiff could return to his previous position as a shipping supervisor because Plaintiff's

previous job was a composite job (warehouse worker, shipping and receiving clerk, and shipping supervisor) that required additional physical abilities which the ALJ did not properly consider. In support of his position, Plaintiff points to the description of his job that he provided in his application which stated as follows:

> I loaded and unloaded trucks. I had to stack boxes of merchandise, by hand, that ranged from 30 lbs to 85 lbs up to 6 feet high and placed them on the floor in stacks depending on the size of the boxes. I would then have to later move the boxes and stack them on a pallet, by hand, from 4-5 feet high, before moving the pallet by forklift for shipping. I loaded and unloaded trucks by hand and by forklift. It began [sic] too difficult for me to operate the forklift due to the constant turning of the forklift and I got where I also could not stack them by hand due to the limited mobility that I was having due to my lft clavicle/lft rotator cuff injury. I also had to stamp all the boxes that I proceeded (lot numbers, shipping dates, and weight of the boxes). I kept a shipping and receiving log. (Tr. 159).

(Doc. 16 at 2). Based on the above physical requirements, Plaintiff asserts that substantial evidence does not support that Plaintiff could return to his previous work.

As an initial matter, Plaintiff does not allege that the RFC determined by the ALJ is not supported by substantial evidence. Rather, Plaintiff alleges that after determining his RFC, the ALJ improperly considered Plaintiff's past relevant work of a shipping supervisor as light work and, therefore, improperly determined that Plaintiff could to return to that position based on his RFC. However, Plaintiff does not address the fact that while the ALJ determined Plaintiff could return to his previous position, he specifically

7

noted that such a return would be based on the job as generally performed, not as Plaintiff performed it. (Tr. at 26) ("The vocational expert testified that the claimant could perform work as a Shipping supervisor *per the DOT* but not per his testimony. As noted above, the DOT indicates that this work activity is performance of work activity at the light exertional level. Accordingly, although the claimant may not be able to perform work as a Shipping supervisor *as actually performed*, the claimant would be able to perform past relevant work as Shipping supervisor *as generally performed.*") The record is clear that the ALJ properly evaluated the exertional demands of Plaintiff's past work based on Plaintiff's testimony and acknowledged that Plaintiff performed his previous job at a medium level, and not the light level that the RFC dictated. Therefore, Plaintiff's position that the ALJ erred by failing to consider all of the physical duties of Plaintiff's composite job, when determining that Plaintiff could return to his past relevant work as a shipping supervisor, is without merit. Namely, because the ALJ did not determine that Plaintiff could return to his previous job as it was performed by Plaintiff or that his previous work, as performed, was at the light exertional level. Further, there is no evidence that the ALJ erred in determining that Plaintiff could return to his previous position as a shipping supervisor, as it was generally performed.[2] For the reasons set forth above, Plaintiff's first assignment of error is without merit.

---

[2] Even assuming Plaintiff's assignment of error were correct, it fails to address the fact that the ALJ made an alternative determination that there were other jobs available in the

8

B.    **Credibility**

Plaintiff's second assignment of error is that the ALJ erred in not including a statement of Plaintiff's pain and its functional effects and that he improperly assessed Plaintiff's credibility. (Doc. 16 at 4). Plaintiff asserts that the ALJ erroneously cherry-picked small portions of Dr. King's (Plaintiff's treating physician) deposition testimony to discredit Plaintiff. (Doc. 16 at 4). In support of his position, Plaintiff refers to the testimony of Dr. King, wherein Dr. King explained that "there's going to be periods of time, several days out of the month or whatever, where he may have issues with that and not be able to complete that task […] Because of pain related to the shoulder, sure." (Doc. 16 at 4; Tr. 495). Plaintiff also asserts that another portion of Dr. King's testimony, contrary to the ALJ opinion, makes it clear that Dr. King was not confused about the exertional level of Plaintiff's work and still opined that Plaintiff would not likely be able to sustain his previous work. (*Id*.) Lastly, Plaintiff contends that ALJ did not consider the correct pain standards when assessing Plaintiff's subjective complaints of pain. (Doc. 16 at 5).

After summarizing Plaintiff's Disability Reports and Function Report and Plaintiff's testimony at the hearing the ALJ found "Claimant's allegations and testimony of disabling pain and functional restrictions disproportionate to the objective medical evidence". (Tr. at 20). Specifically,

---

national economy beyond Plaintiff's past relevant work that Plaintiff could still perform; a finding that Plaintiff does not contend was in error. (Tr. at 26-27).

9

the ALJ stated that the record did not contain objective signs and findings that could reasonably be expected to produce the degree and intensity of pain and limitations alleged and the physical findings did not establish the existence of deficits usually associated with protracted pain of the intensity, frequency, and severity alleged. (*Id*.) The ALJ summarized Plaintiff's medical records, including Dr. King's records, and stated as follows:

> There [sic] medical evidence leads the undersigned administrative law judge to conclude that Claimant grossly exaggerates his pain and functional limitations. Claimant testified that even after his surgeries, his pain averages 7 or 8 on a 10 point scale. The medical evidence demonstrates otherwise. For example, progress notes from Keene Health and Wellness Clinic dated April 26, 2013, indicate Claimant stated he was not in pain most of the time. His left shoulder was mainly just sore but at night, he had pain that was 3 on a 10 point scale (Exhibit 4F at 39). His pain was mostly 1 on a 10 point scale during the day. (*Id.* at 40). Dr. King saw Claimant for follow-up on February 15, 2013, and noted he had mild tenderness at the surgical site but had improved postoperatively. His shoulder still had some mild pain (Exhibit 3F at 4). Dr. King examined Claimant on March 15, 2013, and notes that Claimant reported significant improvement in his pain. (*Id.* at 3). Dr. King was deposed on September 4, 2014, in a civil lawsuit involving Claimant and his insurer (Exhibit 10F). Regarding the follow-up exams on February 15, 2013, and March 15, 2013, the orthopedist testified Claimant continued to have "subjective limitations." While he did not expect Claimant to be completely healed at six weeks, he "expected him to be having less symptoms than he was having" (*Id.* at 52). Dr. King next examined Claimant on April 26, 2013, and reported he had no complaints, was doing well functionally, had full range of motion, and was neurovascularly intact (Exhibit 3F at 2). On September 27, 2013, Dr. King wrote. "He states he has been having mild pain in the shoulder but admits to participating in an extremely heavy activity. He is only here for follow up to make sure he has not worsened his condition with this heavy activity" (Exhibit 7F at 3). During the deposition, Dr. King testified that prompted [him] to get another study following the September 27, 2013, had started having some mild pain (Exhibit 10F at 61). The CT scan revealed "another nonunion" in the left clavicle. (*Id.* at 64). Dr. King recommended revision surgery to Claimant during a November 22,

> 2[013], visit (*Id.*) but Claimant was not yet interested. (*Id.* at 64). Dr. King performed the second surgery on April 18, 2014. (*Id.* at 75). The orthopedist testified that he had three follow-up visits with claimant (*Id.*) and that Claimant is doing much better today. He does not have nearly the pain that he had before. He still had some tenderness over the site, but it was negligible. (*Id.* at 75). Dr. King averred that on the June 13, 2014, visit Claimant was doing quite well and that his pain had essentially resolved compared to his preoperative pain. (*Id.* at 113). For all of the foregoing reasons, Claimant's allegations of moderately severe to severe pain are found incredible.

(Tr. at 22-23). The ALJ went on to point out that Plaintiff's testimony that he had significant physical limitations was given just twelve days *after* Dr. King's testimony wherein "he allowed Claimant to resume normal activities without restriction." (*Id.* at 23). As a result, the ALJ found Plaintiff's testimony to be less than credible. The ALJ also stated that Plaintiff's testimony relating to his daily living activities was not strong evidence in favor of disability because "allegedly limited daily activities cannot be objectively verified" and even if the alleged limitations were valid, "it is difficult to attribute that degree of limitation to Claimant's medical condition, as opposed to other reasons, in view of the relatively weak medical evidence …". (Tr. at 25).

Further, the ALJ discredited Dr. King's vocational opinions because Dr. King was not a vocational expert and because vocational findings are reserved for the Commissioner. (*Id.* at 23-24). Lastly, the ALJ addressed Dr. King's testimony relating to Plaintiff's ability to return to his past work (referred to by Plaintiff) and explained that such testimony was based on "leading questions from Claimant's counsel … [who]…mischaracterized

11

[Plaintiff's] vocational profile by ineloquently describing him as ' … a heavy laborer, he does, you know, heavy lifting, or whatever, that's what he's trained to do, so that's what he does (Exhibit 10F at 81), that's probably all he's able to do …". The ALJ acknowledged that following the above characterization, Dr. King opined that Claimant had not been able to do such work since the time he began seeing him. (Tr. at 24). However, the ALJ also distinguished Plaintiff's counsel's characterization of Plaintiff's last work as a Shipping supervisor as "heavy work" from the DOT guidelines that state the job required light exertion and from Plaintiff's description of the job that was determined to be at the medium exertional level. (*Id.*)

As for Plaintiff's assignment of error based on the ALJ's diminishing Dr. King's vocational opinion, Plaintiff's argument is not compelling. It is clear that the ALJ considered Dr. King's opinions and specifically stated why those opinions which were vocational in nature were not controlling or given great weight. While Plaintiff may be able to point to evidence in the record which would support a contrary conclusion, the same does not overcome that substantial evidence existed in the record that warranted the ALJ's diminution of Dr. King's vocational testimony.

As for the ALJ's determination relating to Plaintiff's subjective complaints of pain, the record reflects that the ALJ considered the proper pain standard. Pain is not amenable to objective measurement. *See* 20 C.F.R.§ 416.928. As a result, the Eleventh Circuit in *Holt v. Sullivan*, 921

F.2d 1221 (11th Cir. 1991), articulated the "pain standard," which applies when a disability claimant attempts to establish a disability through his own testimony of pain or other subjective symptoms. The pain standard requires:

> (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Dyer v. Barnhart*, 395 F.3d 1206, 1210-11 (11th Cir. 2005); see 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 416.929. "A claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." *Holt,* 921 F.2d at 1223. If a claimant satisfies these criteria, an ALJ must explain the reasons for discrediting the claimant's allegations of subjectively disabling symptoms. *Dyer*, 395 F.3d at 1210-11. "It is established in this circuit that if the [ALJ] fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the [ALJ], as a matter of law, has accepted that testimony as true. Implicit in this rule is the requirement that such articulation of reasons by the [ALJ] be supported by substantial evidence." *Hale v. Bowen*, 831 F.2d 1007, 1012 (11th Cir. 1987).

In assessing the credibility of an individual, the following factors should be considered:

> (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medications used to alleviate pain or other symptoms; (5)

treatment other than medication, received for relief of pain or other symptoms; (6) any measures, other than treatment, used to relieve pain or other symptoms; and (7) other factors concerning functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); see also SSR 96-7p.

Plaintiff focuses on the ALJ's evaluation of Plaintiff's daily living activities and the ALJ's consideration of medical records which pre-date Plaintiff's second surgery to show that the ALJ erred. (Doc. 16 at 6). However, as quoted above, the ALJ's credibility determination included a thorough summary of Plaintiff's medical history, both before, during, and after, his first and second surgeries, Plaintiff's testimony as to his subjective complaints and capabilities, and Dr. King's deposition testimony. While Plaintiff asserts the that ALJ ignored Dr. King's testimony and Plaintiff's second surgery, the record reflects that the ALJ specifically considered it and discounted it. Moreover, the record reflects that in determining the credibility of Plaintiff, the ALJ considered the seven factors utilized in the 11th Circuit, i.e., medical history, pain, medication, daily activities, etc., and determined that intensity, persistence and limiting effects of the pain Plaintiff alleged was not credible when considered in the light of all the evidence. Moreover, the ALJ articulated the reasons for his determination that Plaintiff was not entirely credible.

Despite Plaintiff's contention that the ALJ ignored the seven factors he is required to consider when determining credibility, the ALJ's articulated reasoning addresses those very factors and there was substantial evidence on

which the ALJ relied in reaching his determination. As a result, the undersigned finds Plaintiff's second contention of error to be without merit.

**C.  Recusal**

Plaintiff's third assignment of error is that the ALJ was biased, incapable of conducting a non-adversarial hearing, and should have recused himself from Plaintiff's proceedings. (Doc. 16 at 7-11). In support of his position, Plaintiff points to the following excerpts from the hearing:

> Atty: Yes, sir. Dr. King is willing to—the reason he hasn't done so thus far is he's trying to give enough time after the most recent surgery that was done on April18th, but I've spoken to his office and he is willing to provide an opinion about Mr. Caffey's permanent restrictions related his injuries and the two surgeries he's performed. And I would like the Court to leave the record open for 30 days so that I can I provide that evidence.
>
> ALJ: I will not leave the record open 30 days, counselor. I will allow possibly a week, but we will get to that point—I will make that decision as I've heard what the claimant has to tell me today. But 30 days just to obtain a medical source statement that frankly I should have right now if the doctor is willing to make a statement. Statements as to a person's functionality should not be coming to me on the date of the hearing or after the hearing. [Inaudible] on this case and the preparation has been going all along. There should be something in the record now. I question highly when I receive something on the hearing date or after a hearing date.
>
> Atty: Okay. Could I put on the record my response, Judge?
>
> ALJ: Not at this time. Anything else new that I need to address?
>
> Atty: No, Your Honor. But I would like to provide justification about why we don't have that.
>
> ALJ: Okay. I told you I was going to come back to that by the end of the hearing. Did I not say that? I said I'll come back to that issue by the end of the hearing.

15

Atty: Okay.

[....]

ALJ: So wouldn't it have made more sense, at least in my mind, and you say you would've stopped anyway, the record suggests but for them laying you off, you would've continued to work. Why would I just assume that if they did not lay you off, you were going to stop working? Even with the pain that you're describing, wouldn't my better assumption be if you needed the surgery, you were going to get that surgery and return to work as soon as possible?

A: No, sir.

ALJ: How could I not assume that to true?

A: I couldn't return to work because of the injury I had because they put steel plated all across my shoulder.

ALJ: ...So then, once again, if you were not laid off, follow my question closely, if you were not laid off, and the arm started to bother you, but that job still existed, if after you had had the surgery, that you didn't have until after you stopped working, would you have not returned to that job and at least tried to work? And if not, tell my why not.

A: Because my body wouldn't let me.

[....]

ALJ: This is September 2013. He states that he has been having mild pain in the shoulder, but admits to participating in extremely heaving activity.

A: When in 2013?

ALJ: September or July of 2013. September 27, 2013....

A: Well, that's when I hurt it, trying to—that's when I hurt it trying to help a friend move something and I injured my shoulder again and that's when I went back to Dr. King.

ALJ: Are you following my line of questions, sir?

A: I'm trying my best to.

> ALJ: You're telling me that had your job still existed, you would not have attempted to return to work?
>
> A: No, sir, I couldn't.

(Tr. 36-37, 41-42). Plaintiff also points out that when Plaintiff's counsel finished questioning Plaintiff, the ALJ asked "Do you care to address the inconsistencies at all, counsel?" and when counsel responded, the ALJ stated "Counsel, do you ever attempt to answer a question as asked?" after which the following transpired:

> ATTY: I did answer it, Your Honor. I said no, I believe Dr. King can address the inconstancies. I did answer it.
>
> ALJ: Did I not say at least three times that I'm going to allow at least 10 days based on the testimony that I received? Have I once said that I'm not going to consider anything from that doctor?
>
> ALJ: Are you going to address the fact that he is still under the age of 50 and is, therfrom [sic] capable of sedentary work activity? Have I heard anything from the claimant that would lead me to conclude that he would be unable to perform sedentary work activity?

(Tr. 52-53). Plaintiff argues that these conversations establish that the ALJ had made up his mind about Plaintiff and that he planned to deny him benefits before the hearing took place and that they, therefore, establish unfair bias.

"The Social Security Act 'contemplates that disability hearings will be individualized determinations based on evidence adduced at a hearing.'" *Heckler v. Campbell*, 461 U.S. 458, 467, 103 S.Ct. 1952, 1957, 76 L.Ed.2d 66, 74 (1983). A claimant is entitled to a hearing that is both full and fair. *Clark v. Schweiker*, 652 F.2d 399, 404 (5th Cir. 1981). The regulations governing

Title II dictate that "[a]n administrative law judge shall not conduct a hearing if he or she is prejudiced or partial with respect to any party or has any interest in the matter pending for decision." 20 C.F.R. § 404.940. As cited by Plaintiff, "The ALJ plays a crucial role in the disability review process. Not only is he duty-bound to develop a full and fair record, he must carefully weight the evidence, giving individualized consideration to each claim that comes before him. Because of the deferential standard of review applied to his decision-making, the ALJ's resolution will usually be the final word on a claimant's entitlement to benefits. The impartiality of the ALJ is thus integral to the system." *Miles v. Chater*, 84. F.3d 1397, 1401 (11th Cir. 1996).

A review of the record in this action, including those portions of the hearing testimony pointed out by Plaintiff, do not establish that the ALJ was biased or unfairly prejudicial to Plaintiff. While the record reflects that the ALJ questioned both Plaintiff and Plaintiff's attorney with regard to what the ALJ classified as inconsistencies within the record, there is no indication that the ALJ was impartial to Plaintiff or that his questions and or comments were inappropriate. "[J]udicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They may do so if they reveal an opinion that derives from an extrajudicial source; and they will do so if they reveal such a high degree of favoritism or antagonism as to

make fair judgment impossible." *Liteky v. United States*, 510 U.S. 540, 555, 114 S.Ct. 1147, 1157, 127 L.Ed.2d 474 (1994). Bias or partiality are not established by "expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women ... sometimes display." *Id*. at 555–56, 114 S.Ct. at 1157. Even where a judge is "stern and short-tempered," the judge's "ordinary efforts at courtroom administration" do not demonstrate inappropriate bias. *Id*. at 556, 114 S.Ct. at 1157. In the instant action, there is no evidence that the ALJ's questions or responses were more than expressions of impatience, dissatisfaction, or annoyance. As a result, Plaintiff's contention that the ALJ was unfairly prejudicial and biased is without merit.

## CONCLUSION

Plaintiff has raised three claims in bringing this action and all three are without merit. Upon consideration of the entire record, the Court finds "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Therefore, it is **ORDERED** that the Secretary's decision be **AFFIRMED**, *see Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980), and that this action be **DISMMISSED**. Judgment will be entered by separate Order.

DONE this 25th day of July 2017.

> */s/ Katherine P. Nelson*
> **KATHERINE P. NELSON**
> **UNITED STATES MAGISTRATE JUDGE**